UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUQAYYAH D. BLUE,

    Petitioner,　　　　　　　　　　　　Civil No. 2:06-CV-11164
　　　　　　　　　　　　　　　　　　　　　　HONORABLE DENISE PAGE HOOD
v.　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

CLARICE STOVALL,

    Respondent,
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

Ruqayyah D. Blue, ("Petitioner"), presently confined at the Scott Correctional Facility in Plymouth, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In her *pro se* application, Petitioner challenges her convictions for first-degree murder, M.C.L.A. 750.316(1)(a); first-degree felony murder, M.C.L.A. 750.316(1)(b); assault with intent to commit murder, M.C.L.A. 750.83; and felony-firearm, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. Petitioner's convictions arose from the shooting death of Ezell Thomas and the shooting of Edna Taylor during an August 23, 2001 larceny.

1

At trial, Petitioner's sister, Kenisha Blue ("Kenisha"), testified that Petitioner told her that she planned on robbing Thomas, in order to obtain money to replace a car that had been stolen. Petitioner told Kenisha that "Man," Petitioner's boyfriend, had ordered Petitioner to rob Thomas and had threatened to harm her if she did not do so. Petitioner told Kenisha that she had been given a gun by "Man" to commit the robbery. Petitioner had this gun for up to a week prior to the murder. Petitioner told Kenisha that Thomas' jewelry would cover the costs of the stolen automobile.

Latoyia Flanders testified that she had known "Man" for about four years. On August 23, 2001, Flanders got into a car with Petitioner, believing that they were going to retrieve "Man's" car, which had been stolen from Petitioner when she had been in possession of it. The two women drove to and entered a cell phone and pager store owned by Ezell Thomas. While Flanders was looking at a phone display, she heard gunshots and observed Petitioner draw a gun and shoot Thomas. As Flanders observed Edna Taylor, a store employee, run toward the back of the store, Flanders heard more gunshots. After shooting Thomas, Petitioner took jewelry from him and went through his pockets. When Petitioner and Flanders got back into the car, Petitioner realized that she had left her phone back in the store and went back in to retrieve it. Upon entering the store a second time, Petitioner shot Edna Taylor. While Petitioner was in the store, Flanders drove off and went to a woman's house, where she called the police.

The medical examiner testified that Mr. Thomas died from multiple gunshot wounds to the body.

Edna Taylor testified that she worked in Mr. Thomas' store. Taylor recognized Petitioner as a client. Petitioner often came to the store to pay her telephone bill. On the day of the shooting, Petitioner came into the store with an unknown female. Petitioner began speaking with Mr. Thomas. While Taylor was on the phone with her son, she heard a "pop" noise and observed Petitioner with a gun. Petitioner attempted to shoot Taylor also, but the gun jammed. However, Taylor heard two more shots as she fled out the backdoor. Taylor called 911. As Taylor attempted to pull Thomas' body toward the back of the store, Petitioner re-entered the store and fired more gunshots. Taylor received a gunshot wound to her chest and shoulder.

Dequina Howard testified that on August 20, 2001, Petitioner came to her house and told Howard that she was going to go to her godfather, Mr. Thomas, to obtain some money to replace her boyfriend's stolen car. Petitioner told Howard that she was going to set Thomas up, rob him, or shoot him, because she knew that he had money.

Anita Durr testified that Petitioner was her niece and that she had observed Petitioner in possession of some jewelry after the robbery.

A number of witnesses testified that Petitioner's boyfriend, Jerome Boyce, a/k/a/ "Man", had been physically abusive toward Petitioner in their relationship.

Flanders testified that "Man" had been charged with criminal sexual conduct where Flanders was the complainant.

Several witnesses further testified that it was out of character for Petitioner to carry a weapon and that they did not know her to be a violent person.

Petitioner's conviction was affirmed on appeal. *People v. Blue,* No. 246782 (Mich. Ct. App. July 27, 2004). The Michigan Supreme Court denied review of the conviction. *People v. Blue,* 472 Mich. 879; 693 N.W.2d 817 (2005). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

> I. The trial court reversibly erred and denied Petitioner the right to present her duress defense to the predicate felony murder and to the separate crime of assault with intent to murder.
>
> II. The issue of credibility was "closely drawn," and the court committed reversible error by failing to sua sponte give a cautionary instruction on the unreliability of accomplice testimony with regard to the prosecution's key witness, Latoyia Flanders, in violation of Ms. Blue's right to a properly instructed jury.
>
> III. Ms. Blue was denied the effective assistance of counsel, where counsel failed to request a cautionary instruction on the unreliability of accomplice testimony with regard to the testimony of Latoyia Flanders.
>
> IV. The trial court violated Ms. Blue's due process right to present a defense by refusing to adjourn the trial so that she could obtain an independent doctor's non-cumulative evaluation and testimony necessary to support her potential insanity defense.

## II. Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas

4

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

**A. Claim # 1. The duress defense claim.**

Petitioner first claims that she was deprived of the right to present a defense, because the trial court refused to instruct the jury that duress was a defense to the predicate felony of larceny, which supported the felony murder charge, and the assault with intent to commit murder charge, because her allegedly abusive boyfriend ordered her to commit the crimes. The Michigan Court of Appeals rejected Petitioner's claim, in part, because, under Michigan law, duress is not a defense to homicide. *Blue,* Slip. Op. at * 2. The Michigan Court of Appeals further held that the evidence in this case did not support the theory that Petitioner committed the crimes under duress. *Id.*

State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975). What is essential to establish the elements of a crime is a matter of state law. *See Sanford v. Yukins,* 288 F. 3d 855, 862 (6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes. " *Lakin v. Stine,* 80 Fed. Appx. 368, 373 (6th Cir. 2003) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000) and *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86 (1986)). The circumstances under which a criminal defense may be asserted is a question of state law. *Id.*

Michigan courts have repeatedly held that duress is not a defense to

homicide. *E.g., People v. Gimotty,* 216 Mich. App. 254, 257; 549 N.W.2d 39 (1996); *People v. Moseler*, 202 Mich. App. 296, 508 N.W. 2d 192 (1993); *People v. Etheridge*, 196 Mich. App. 43, 56; 492 N.W. 2d 490 (1992); *People v. Travis*, 182 Mich. App. 389, 392; 451 N.W.2d 641 (1990); *People v. Feldmann*, 181 Mich. App. 523, 532; 449 N.W.2d 692 (1989); *People v. Dittis*, 157 Mich. App. 38, 41; 403 N.W.2d 94 (1987). Moreover, duress is not a defense to a charge of assault with intent to commit murder. *People v. Wyrick,* 1998 WL 1991134, *3 (Mich. Ct. App. June 9, 1998) (unpublished). "[T]he rationale underlying the[se] common law rule[s] is that one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead." *Dittis*, 157 Mich. App. at 41.

Petitioner argues that she was entitled to raise a duress defense to the predicate offense of larceny, the felony element of the felony murder charge. However, the "rationale for not permitting duress as a defense to homicide . . . extend[s] not only to direct acts of homicide, but also to the commission of the criminal acts underlying felony murder which create a high risk of death or serious physical harm and which in fact result in death." *Gimotty v. Elo,* 40 Fed. Appx. 29, 33 (6th Cir. 2002). Accordingly, this claim does not entitle Petitioner to habeas relief. *Id.*

**B. Claim # 2. The accomplice instruction claim.**

7

Petitioner next claims that the trial court erred in failing to *sua sponte* give the jurors a cautionary instruction that they should examine Latoyia Flanders' testimony more carefully because she was an accomplice to the crime. The Michigan Court of Appeals rejected this claim. *Blue,* Slip. Op. at * 2.

Under Sixth Circuit precedent, a trial court's failure to give a special cautionary instruction on accomplice testimony is not reversible error, so long as the court has given the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses. *United States v. Carr*, 5 F. 3d 986, 992 (6th Cir. 1993); *Scott v. Mitchell,* 209 F. 3d 854, 883 (6th Cir. 2000) ("We have since followed *Carr* in not requiring accomplice instructions as a general matter"); *see also United States v. Bucheit,* 134 Fed. Appx. 842, 859 (6th Cir. 2005) (failure to give accomplice instruction not reversible error); *United States v. Allgood*, 45 Fed. Appx. 407, 412 (6th Cir. 2002) ("While it is the preferred practice to give a cautionary instruction regarding the possible unreliability of accomplice testimony, we have not held that such an instruction is required for a jury to be properly cautioned") (quotations removed). On habeas review, a state trial court's general instruction regarding witness testimony receives heightened deference. *See Latimer v. Burt,* 98 Fed. Appx. 427, 433 (6th Cir. 2004) ("the state trial court's failure to give specific instructions regarding accomplice and informant credibility would not have constituted reversible error even if this were

8

the direct appeal of a federal case, so relief is certainly not appropriate on a petition for habeas corpus").

Here, the trial court gave the jury a general instruction on witness credibility and the various considerations that it should take into account in weighing the testimony of various witnesses. (Tr. Vol. III, pp. 32-34). Accordingly, the state trial court's refusal to specifically instruct the jury regarding the credibility of accomplice witnesses did not violate Petitioner's right to due process, *Latimer,* 98 Fed. Appx. at 432-33, and Petitioner is not entitled to habeas relief on her second claim.

**C. Claim # 3. The ineffective assistance of counsel claim.**

In her third claim, Petitioner alleges that her counsel was ineffective for failing to request a cautionary instruction on accomplice testimony.

To prevail on her ineffective assistance of counsel claim, Petitioner must show that the state court's conclusion regarding her claim was contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Assuming that Latoyia Flanders qualified as an accomplice to Petitioner's crime, she was not the only witness against Petitioner in this case. Kenisha Blue

9

and Dequina Howard both testified that Petitioner had talked about robbing, and possibly shooting, Ezell Thomas prior to the murder. Edna Taylor testified that she witnessed Petitioner shoot Thomas as well as her. Petitioner's aunt, Anita Durr, saw Petitioner in possession of jewelry following the robbery. Given overwhelming evidence of Petitioner's participation in these crimes, even if the alleged failure of counsel to request an instruction on accomplice testimony was deficient, there was no showing of reasonable probability that but for the error, the result of the trial would have been different. In other words, Petitioner has not demonstrated prejudice. Accordingly, Petitioner is not entitled to habeas corpus relief on her ineffective assistance of counsel claim. *Krist v Foltz*, 804 F.2d 944, 947 (6th Cir. 1986).

**D. Claim # 4. The psychiatric assistance claim.**

Petitioner lastly claims that the trial court abused its discretion when it refused to adjourn the trial on the first day of trial so that Petitioner could obtain an independent, non-cumulative psychiatric examination to support an insanity defense.

On the morning of the first day of trial, Petitioner's counsel requested an adjournment to obtain an independent psychiatric evaluation, noting that although a report prepared by the State Center for Forensic Psychiatry indicated that Petitioner was competent to stand trial, counsel indicated that Petitioner was currently on a number of medications while incarcerated at the jail; namely,

10

Depakote, Pasil, Desyrel, and Seroquel. Although the report mentioned that Petitioner was on these medications, counsel noted that the report failed to mention Petitioner's "processes" before she started taking the medications. The prosecutor indicated that Petitioner had been referred for an evaluation to the Forensic Center and a report had been prepared. The examiner concluded that Petitioner was mentally competent to stand trial and that she was not legally insane when she committed the crimes. The examiner indicated that Petitioner showed no signs of mental retardation or mental illness. The examiner further opined that Petitioner was probably placed on the medications at the jail, because she was mildly depressed due to being incarcerated. The examiner, in fact, believed that she did not need to be on these medications, because Petitioner did not exhibit any signs of mental illness. The trial court judge noted that he had initially referred Petitioner to the Circuit Court Psychiatric Clinic, where a report was prepared indicating that Petitioner was competent to stand trial. The examiner from the Circuit Court Psychiatric Clinic indicated that he or she was unable to render an opinion as to Petitioner's criminal responsibility, because Petitioner refused to cooperate with them. The trial court then referred Petitioner to the Forensic Center, where the examiner determined that Petitioner was competent to stand trial and that she did not meet the legal requirements for insanity. Because several reports had been prepared regarding Petitioner's state of mind, the trial court refused to adjourn the trial. (Tr. Vol. I, pp. 3-8).

The Michigan Court of Appeals rejected Petitioner's claim, finding that the trial court's appointment of a state-employed expert [to evaluate Petitioner's mental state] that was independent of the prosecution was sufficient to meet the constitutional standards. *Blue,* Slip. Op. at * 3.

When an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must assure a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense. *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). "[T]his is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or to receive funds to hire his own." *Id.*

Here, the trial court's failure to appoint an additional psychiatric expert for Petitioner did not violate her constitutional rights so as to entitle her to habeas relief. First, this is not a case where no expert psychiatric assistance was afforded. The trial court referred Petitioner to the Forensic Center, where she was evaluated for criminal responsibility. The forensic examiner found that Petitioner was sane. Absent any evidence suggesting that this examination ignored some essential factors or theory, this Court cannot find that the forensic examiner's aid was inadequate or that it deprived Petitioner of fundamental fairness. *Mackey v. Dutton,* 217 F. 3d 399, 410 (6th Cir. 2000); *Matlock v.*

*Rose,* 731 F. 2d 1236, 1244 (6th Cir. 1984). In light of Petitioner's purposeful behavior in this case, before, during, and after the shooting, there appears to be little evidence which suggests that there was a fair factual basis for the claim that Petitioner's sanity was in doubt. *Matlock,* 731 F. 2d at 1244. Petitioner has failed to show that additional pyschiatric examinations would have buttressed her defense. Accordingly, she is not entitled to habeas relief on her fourth claim.

## IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

        s/ DENISE PAGE HOOD
        **HON. DENISE PAGE HOOD**
        UNITED STATES DISTRICT COURT

DATED: January 8, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record and Rugayyah D. Blue, Reg. No. 435545, Robert Scott Correctional Facility, 47500 Five Mile Rd., Plymouth, MI 48170 on January 8, 2008, by electronic and/or ordinary mail.

        S/William F. Lewis
        Case Manager